# Supreme Court of Texas

---

No. 21-0658

---

In the Interest of A.L.R., a Child

---

On Petition for Review from the
Court of Appeals for the Eleventh District of Texas

---

**PER CURIAM**

Texas Family Code Section 161.001(b) enumerates the grounds for terminating a parent's rights, which must be coupled with a finding that termination of those rights is in the child's best interest. TEX. FAM. CODE § 161.001(b)(1)(A)-(U), (b)(2). This case involves Subsection (O). Under Subsection (O), a court may terminate a parent's rights based on that parent's failure to comply with a court order that:

> specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal . . . .

*Id.* § 161.001(b)(1)(O). To terminate a parent's rights under Subsection (O), the court's order describing the actions necessary to obtain the return of the child must be "sufficiently specific to warrant termination of parental rights for failure to comply with it." *In re N.G.*, 577 S.W.3d 230, 238 (Tex. 2019).

In this case, the trial court found that the father: (1) failed to comply with a court-ordered family service plan; and (2) knowingly engaged in criminal conduct, resulting in his incarceration and inability to care for his child for a period of at least two years (Subsection (Q)). *See* TEX. FAM. CODE § 161.001(b)(1)(O), (Q). The court of appeals affirmed the Subsection (O) finding. ___ S.W.3d ___, 2021 WL 2584470, at *3-*4 (Tex. App.—Eastland June 24, 2021). The court of appeals did not reach whether the evidence supports termination under Subsection (Q). *Id.*

The father petitioned for review, contending that the trial court's order does not support termination under Subsection (O) because the order adopts tasks to complete phrased in the form of "requests." We agree. Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment and remand the case to that court to consider the trial court's alternative basis for termination under Subsection (Q).

## I

In August 2017, hospital medical providers notified the Department of Family and Protective Services that the parents of a newborn child could not properly care for the child, even with nursing assistance.

In an affidavit seeking the child's removal, a Department investigator recounted interviews with several medical providers and the parents and the investigator's visit to the father's motel room. The parents had been homeless for a significant portion of the pregnancy.

2

The motel room they currently lived in was "filthy," and the parents had no diapers or formula.

When asked about prior hospital visits—during which hospital staff noticed bruises to her face—the child's mother reported that the father had hit her. The father explained that someone had "spiked his beer with 'crystal meth,'" causing him to black out and assault the mother. The investigator also noted that the father had been convicted as a minor for sexual assault on a family member. Both parents reported mental health diagnoses and prescriptions for attendant medications.

The child's pediatrician observed the parents and expressed concern that they were not capable of caring for the child. The doctor noted that the mother was nonverbal and worried that she would not recognize the need to feed and change the infant. The father's mother also expressed concern about the child going home with the parents, and she anticipated that "something could happen" if her son became angry.

The trial court granted the Department's request to remove the child on an emergency basis. After a hearing, the trial court named the Department as the child's temporary sole managing conservator, with the mother and father as possessory conservators. The mother eventually voluntarily terminated her parental rights.

In October, the trial court ordered the father "to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of this suit," thereby incorporating the service plan by reference. The Department's plan warns that, unless the parents could provide the child with "a safe environment," their parental

rights may be terminated. The plan sets forth "Service Plan Goals" stating that, among other things, the "[father] will comply with court orders" and "will demonstrate an ability to provide basic necessities such as food, clothing, shelter, medical care, and supervision for the child." But the plan's specific "tasks" are worded as requests, each beginning with "[t]he Department requests." These requests state, for example, that "[t]he Department requests" that the father "refrain from involvement in criminal activity" and "requests" that the father "participate in parenting classes." The father executed a written acknowledgement that his "progress on this plan will be evaluated" based on whether he "completed" tasks in the plan and "achieved" the plan's goals.

The trial court in this case held a bench trial in November 2020. By that time, the father was incarcerated, having pleaded guilty to felony family violence assault for an incident that occurred in May 2019; the trial court in that case assessed his punishment at five years in prison.

The trial court terminated the father's rights, finding that he had failed to comply with the court-ordered plan and had engaged in criminal conduct resulting in his inability to care for his child for more than two years from the date of the filing of the petition. The court further found by clear and convincing evidence that termination of the parent–child relationship was in the child's best interest.

The father appealed, and the court of appeals affirmed. ___ S.W.3d ___, 2021 WL 2584470, at *4. With respect to Subsection (O), the court concluded that the child's father had understood the

4

service plan, and that "he had been advised that his parental rights could be terminated if he was not willing or able to provide [the child] with a safe environment, even with the assistance of the service plan." *Id.* at *3. The court of appeals observed that:

> [a]lthough some of the language used in the service plan could have been more authoritative and phrased as a command rather than a request, it was clear from the combined terms of the court order and the service plan that [the father] was required to complete the tasks and services set forth in the service plan.

*Id.* Because only one statutory ground is necessary to support a termination of parental rights, the court of appeals did not reach whether sufficient evidence supports the trial court's alternative ground for termination under Subsection (Q). *Id.* at *4.

In this Court, the father contends that his service plan was not sufficiently specific to support termination of his parental rights under Subsection (O). The Department responds that the trial court's temporary order states that "each of the actions required . . . are necessary to obtain the return of the child, and failure to fully comply with these orders may result in the restriction or termination of parental rights." It further observes that "Compliance with Service Plan" is a required action in the trial court's order.

## II

Under Subsection (O), "[t]he court may order termination of the parent–child relationship if the court finds by clear and convincing evidence: [the parent] failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child." TEX. FAM. CODE § 161.001(b)(1)(O).

5

"The department . . . must write the service plan in a manner that is clear and understandable to the parent in order to facilitate the parent's ability to follow the requirements of the service plan." *Id.* § 263.102(d). Although the Family Code gives the trial court the discretion to modify the service plan with "any changes . . . it deems necessary," and to "render additional appropriate orders to . . . require compliance with" the service plan, the order must comply with the statute's specificity requirement. *Id.* § 263.106.

Here, the Department argues that the trial court's general order suffices. Because the general order does not "specifically establish[]" the actions that a parent must take, however, violation of the order does not fulfill the ground for termination under Subsection (O). Subsection (O) contemplates direct, specifically required actions. *Id.* § 161.001(b)(1)(O). Here, those actions are worded as requests, not as positive mandates. For example, the plan states: "The Department *requests* that [the father] participate in parenting classes," not "the father *must*."

A request does not connote a mandatory "requirement."[1] The plan's language instead suggests that completion of the requested tasks could be helpful in creating a safe environment for the child, but glosses over its mandatory nature. The plan reads:

> To the parent: this is a very important document. *Its purpose is to help you provide your child with a safe environment within the reasonable period specified in the plan.* If you are unwilling or unable to provide your child with a safe environment, your parental and custodial

---

[1] *Compare Request*, MERRIAM-WEBSTER'S ONLINE DICTIONARY (2020) ("the act or an instance of asking for something"), *with Required*, *id.* ("stipulated as necessary to be done, made, or provided").

duties and rights may be restricted or terminated or your child may not be returned to you. There will be a court hearing at which a judge will review this service plan. [Emphasis added.]

The service plan's goals, unlike its "tasks," are worded as commands. These goals, however, are not part of the checklist establishing specific actions that the parent must complete to obtain the return of the child. A parent could interpret the service plan as *requiring* that a parent provide the child with a safe environment, with the Department's *requested* "tasks" acting as signposts to help achieve that goal. The plan does not alert the parent to the mandatory nature of specific criteria, as it must to serve as grounds for termination under Subsection (O).

The trial court's order to comply with the Department's plan does not alter this interpretation. Subsection (O) authorizes termination for failure to comply with a family service plan only when that plan requires the parent to perform specific actions. *Id.* Because the Department requested (rather than required) the completion of various tasks to achieve mandatory goals, the plan was ambiguous as to the specific actions required to obtain the child's return under Subsection (O).

The Department, citing cases from the courts of appeals, observes that the father attended parenting classes—one of the requested tasks listed in his plan—and thus, it argues, the father understood that it was a required, not a requested, task. *See, e.g., In re D.K.J.J.*, No. 01-18-01081-CV, 2019 WL 2455623, at *15 (Tex. App.—Houston [1st Dist.] June 13, 2019, pet. denied); *In re M.G.*, No. 07-19-00289-CV, 2020 WL 611554, at *6-*8 (Tex. App.—Amarillo Feb. 7, 2020, no pet.). In these

7

cases, however, the orders required those specific actions—"[mother] must remain drug free," or "[Father] will attend individual counseling." *In re D.K.J.J.*, 2019 WL 2455623, at *15; *In re M.G.*, 2020 WL 611554, at *7. A parent's engagement with a service plan shows the parent's understanding of its terms, but engagement with an ambiguous plan does not show an understanding that compliance with those terms are mandatory to secure the return of the child.

An ambiguous family service plan does not afford a parent the specific notice that Subsection (O) requires, which is that the order "specifically establish[] the actions necessary for the parent to obtain the return of the child." TEX. FAM. CODE § 161.001(b)(1)(O). Because the plan in this case is ambiguous as to the actions that the father had to take to restore his parental rights from their temporary deprivation, we hold that the trial court erred in concluding that the Department established, by clear and convincing evidence, grounds for termination under Subsection (O). *Cf. In re J.F.C.*, 96 S.W.3d 256, 277-78 (Tex. 2002); *In re N.G.*, 577 S.W.3d at 237-38.

*　　*　　*

Accordingly, without hearing oral argument, TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment affirming the trial court's termination of the father's parental rights on Subsection (O) and remand for consideration of the trial court's termination order on Subsection (Q).[2]

**OPINION DELIVERED:** June 17, 2022

---

[2] The Department requests that we affirm the court of appeals' judgment based on the trial court's order terminating the father's parental rights on Subsection (Q). Because the father did not brief this issue, we decline to address it. *See Garcia v. Robinson*, 817 S.W.2d 59, 60 (Tex. 1991) (holding that court of appeals should not have reached issue because Respondent "did not raise it in the trial court or brief it on appeal"). We are confident that the court of appeals will promptly dispose of this remaining issue.